**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

TV Service ZAO, a closed
Joint Stock Company organized
under the laws of the Russian
Federation,

      Plaintiff,

vs.                                                          **Civil Action No. _____**

NWE Talent Agency and
Management, Inc., d/b/a NWE
Talent Agency and
Management Company,
a Florida corporation, and
Ryan Burke, an individual,

      Defendants.

_____/

## COMPLAINT

Plaintiff, TV Service ZAO hereby sues Defendants, NWE Talent Agency and Management, Inc. ("NWE") and Ryan Burke, and states:

### PRELIMINARY STATEMENT

1.       MUZ-TV, and its awards ceremony, are to Russian television and audiences what MTV, and the MTV awards ceremony, are to U.S. audiences.  For this year's awards ceremony on June 1, 2012, MUZ-TV wished for Lady Gaga to appear, to present her with an award and have her perform.

2.       Holding itself out as a talent agency that could secure the services of Lady Gaga, Defendant NWE and its agent Ryan Burke induced Plaintiff to transfer over $1,500,000 to NWE's "escrow account" – which Defendants represented would then be forwarded to Lady Gaga – for Lady Gaga's appearance at the awards ceremony.

3.      Ultimately, Defendants were unable to secure Lady Gaga's appearance at the awards ceremony.

4.      Despite due demand by Plaintiff, and the direction of Lady Gaga's representatives, to return the monies deposited allegedly for her benefit, Defendants have refused to do so.  At the same time, Defendants have improperly withdrawn $300,000 as "broker fees" from the $1,500,000 that was being held by them in the escrow account allegedly to secure Lady Gaga's services.

5.      This action seeks the return of these funds as well as consequential damages.

### THE PARTIES

6.      Plaintiff, TV Service ZAO, is a closed joint stock company organized under the laws of the Russian Federation, whose principal place of business is 25a/6 Varshavskoe shosse, Moscow, 117105 Russia.

7.      Upon information and belief, NWE is a Florida company whose principal place of business is 1680 Michigan Avenue, Miami Beach, Florida.

8.      Upon information and belief, Ryan Burke is an agent of NWE and is a resident of Florida.

### JURISDICTION AND VENUE

9.      This Court's jurisdiction is based upon diversity of citizenship of the parties under 28 U.S.C. §1332.  The matter and controversy exceeds the sum of $75,000, exclusive of interests and costs.

10.     This Court has personal jurisdiction over Defendants pursuant to Rule

4(k)(1)(A), Fed. R. Civ. P., because Defendants are citizens and residents of Florida and

this action arises out of Defendants operating, conducting, engaging in, or carrying on a

business or business venture in this state or having an office or agency in this state, and

thus Defendants would be subject to the jurisdiction of a court of general jurisdiction in

the State of Florida, pursuant to Fla. Stat. §§ 48.193(1)(a) & 48.193(2).

11.     Venue is properly within this district, the district in which defendants

reside, under 28 U.S.C. §1391.

## BACKGROUND FACTS

12.     TV Services ZAO is a wholly-owned indirect subsidiary of UTH Russia

Limited, a company incorporated under the laws of Cyprus under number HE 251536

whose registered office is at Ledra Business Centre, 1 Poseidonos Street, Egkomi, 2406

Nicosia, Cyprus ("UTH").  Two of UTH's main assets are MUZ-TV, a free major

Russian music TV channel modeled after MTV in the United States, and the Disney

Channel in Russia which is owned 51% by UTH.  MUZ-TV has been broadcasting since

1996.

13.     Since 2003, TV Services has presented the nationally televised MUZ-TV

Music Awards.  The ceremony is broadcast from the Olimpiyski Arena, the stadium built

for the 1980 Summer Olympics in Moscow.  The awards ceremony is held in June of

each year.  One of the highlights of the ceremony is the presentation each year of an

award to a major international recording artist and a performance by that artist at the

ceremony.  Recipients of this award in past years have included Christina Aguilera, Jennifer Lopez, Katy Perry and 50 cent among others.

14.     In August 2011, Arman Davletyarov, an employee of TV Services and director of the awards ceremony, was introduced to George Sergeev, a principal of World Media Alliance, a Florida corporation.  During a meeting between them in Miami, Mr. Sergeev informed Mr. Davletyarov that based upon a contact of his in the music industry, he believed he could secure the services of Lady Gaga for the MUZ-TV Awards Ceremony on June 1, 2012.  In order to enter into negotiations with Lady Gaga, Mr. Sergeev requested that Plaintiff deposit $300,000 in World Media Alliance's escrow account.  Plaintiff complied with Mr. Sergeev's request, transferring $300,000 to World Media Alliance in September 2011.

15.     In October 2011, Andrey Dimitrov, the General Director of TV Services, flew to Miami to meet with Mr. Sergeev. At that meeting, Mr. Sergeev introduced Mr. Dimitrov to Defendant Burke whom he introduced as his contact with Lady Gaga.  Mr. Burke informed Mr. Dimitrov that he and his company, Defendant NWE, had a strong personal relationship with Lady Gaga's personal representatives, including her business manager Troy Carter.  Mr. Burke  assured Mr. Dimitrov that his negotiations with Lady Gaga to secure her appearance at the MUZ-TV Awards on June 1, 2012 were on course.

16.     Also in October 2011, Mr. Sergeev transferred to Burke and NWE $150,000 of the $300,000 that Plaintiff had transferred to World Media Alliance.

17.     In or about the third week of December 2011, Mr. Sergeev forwarded a draft Artist Engagement Agreement to TV Services which provided, among other things,

for the appearance of Lady Gaga on June 1, 2012 at the MUZ-TV Awards (along with a second recording artist, producer and friend of Lady Gaga, Akon).  Compensation was set at $2.5 million plus agreed expenses.  It called for a series of deposits, including the initial binder of $300,000 which had, as set forth above, been paid, a second deposit of $1,350,000 to be paid by Plaintiff to NWE on behalf of the Artists by December 30, 2011; and a third deposit of $850,000 also payable by wire transfer to "NWE f/s/o Artists."  It further provided that the Artists would furnish Plaintiff with promotional videos by January 15, 2012.  Finally, and significantly, it stated that any and all of the deposits would be "immediately fully refundable" by Mr. Sergeev and NWE respectively, if Lady Gaga did not accept the offer to perform in writing.

18.     Upon reviewing the draft agreement, Mr. Dimitrov became concerned that the agreement was between Mr. Sergeev's company, World Media Alliance, Inc. and Plaintiff TV Services, and that Defendant NWE was not also a party.

19.     In an e-mail to Messrs. Burke and Sergeev on December 23, 2011, Mr. Dimitrov requested that the draft agreement be redrafted as a tripartite agreement which would include NWE as a party.  In order to get the deal done, Mr. Dimitrov also offered to "fly to Miami or LA with a $1.3 million check to meet with you in William Morris' offices 'to say hello' to Gaga's agents and give the check to you."

20.     In an e-mail response of the same date, Defendant Burke responded that neither Lady Gaga nor her representatives would meet with Mr. Dimitrov and that unless Plaintiff immediately wired $1.35 million to NWE's escrow account, the deal with Lady Gaga was off:

THEY DON'T NEED MONEY OR DATES, they turn down both of them all day. They are ONLY doing this because of my relationship in the industry. I NEVER asked anyone to send any money to me or my company; the funds were going DIRECTLY to NWE Talent who would then forward to her Management/Agent a deposit, that way they would know its real people they are dealing with …

People who need the money do meetings and phone calls; these guys do straight contracts/agreements, they don't have time to talk or to meet or for the back and forth; quite frankly, they could careless (sic) if you move forward or not, to them you either sign or you don't. Could you imagine what it would be like if every promoter or buyer wanted to meet with the Artist or her Manager or Agent; YOUR DEALING WITH ONE OF THE BIGGEST ARTIST IN THE WORLD.

Anyway, because I highly respect you guys George, I have been pleading on your behalf; this was the outcome: They say that if the funds are not in escrow by 4:00PM EST (US Time), they will issue you a Cease and Desist Letter.

21.    Defendant Burke followed this e-mail with another later that day:

Andrey – As mentioned in my previous e-mail/message, the ball is in your court. It is the end of business day on Friday, December 23, 2011. We have spent long hours working on this particular project/booking and have been fighting for this for you. Because they are dealing with us, because it is the last business day before the holidays, because of the time differential between Miami and Moscow, and because at the time you received our e-mail it was end of business day in Moscow, they have granted us the extension. They state that the funds MUST be in escrow no later than end of business day on Tuesday, December 27, 2011 (that's 5:00 PM EST Miami Time). They've made it clear that they will not wait pass (sic) that because they've already entered into negotiations with the Artist, and to them if they don't have a deposit then the offer is not firm. So if you want to move forward, please make sure that the wire is sent out first thing Monday morning (12/26/11) to ensure that the funds are in escrow by Tuesday, December 27, 2011.

22.    Based upon Defendants' representations that it would forfeit the deal with

Lady Gaga unless the funds were received into the escrow by December 27, 2011,

Plaintiff wired $1.35 million to NWE's escrow account at J.P. Morgan Bank in Fort Lauderdale, Florida.

23.     Defendants eventually met with Lady Gaga's team, which included her manager Troy Carter, on January 10, 2012.  After that meeting, Defendants Burke and NWE advised Plaintiff that Lady Gaga's management had "Conditionally Accepted" an offer to appear at the Awards Ceremony.  But not on June 1 when the ceremony was scheduled to take place, and not for $2.5 million.  According to Defendants, Lady Gaga would only appear on October 9, 2012 (more than 4 months after the date of the MUZ-TV Awards Ceremony), and the guarantee would have to be $3.5 million, not $2.5 million.Furthermore, the "Conditional Acceptance" was not even signed by Lady Gaga or any of her authorized representatives.

24.     After receiving this "Conditional Acceptance" and unsuccessfully attempting to reach Burke, Plaintiff, using other sources, contacted Troy Carter directly, prompting an exchange of e-mails between Defendants, Mr. Carter, and Mr. Burke between January 20, 2012 – January 23, 2012.  Mr. Carter informed Defendants that Lady Gaga never agreed to appear at the awards ceremony, had never accepted. conditionally or otherwise, any terms proposed by Defendants Burke and NEW, and requested that Defendants return the deposited funds to Plaintiff, stating "Since we're all clear that Gaga was never booked for the show, you should have no problem returning the deposit immediately."

25.     Neither the $1.35 million, nor the earlier deposit of $300,000 has been returned to Plaintiff, despite due demand.

26.     On January 25, 2012, Plaintiff learned that Defendants had withdrawn $300,000 from the $1,500,000 in NWE's escrow account for what Defendants claim are broker fees. Of this amount $135,000 was withdrawn by Defendants as broker fees before even meeting with Mr. Carter on January 10, and $65,000 was withdrawn after they knew he had not accepted their proposal.

## FIRST CAUSE OF ACTION

### (Unjust Enrichment)

27.     Plaintiff restates and incorporates by reference all allegations made in paragraphs 1 through 26.

28.     Plaintiff conferred a benefit on Defendants by transferring $1,500,000 to Defendants.

29.     Defendants have knowledge of this benefit, as they sent Plaintiff an Acknowledgement of Receipt on December 29, 2011 confirming that they received $1,500,000 from Plaintiff ($150,000 on September 9, 2011, the first deposit payment and $1,350,000 on December 27, 2011, the second deposit).

30.     Defendants voluntarily accepted and retain this benefit, as they have refused to return the $1,500,000 to Plaintiff.

31.     The circumstances are such that it would be inequitable for Defendants to retain the benefit, as the $1,5000,000 was transferred to Defendants in contemplation of Lady Gaga performing at the Awards Ceremony on June 1, 2012, and it is clear now that Lady Gaga will not be performing at the Awards Ceremony on June 1, 2012.

## SECOND CAUSE OF ACTION

### (Conversion)

32.     Plaintiff restates and incorporates by reference all allegations made in paragraphs 1 through 26.

33.     The $1,500,000 that Plaintiff transferred to NWE's escrow account is Plaintiff's property.

34.     Defendants had an obligation to keep intact the $1,500,000 or deliver it to Lady Gaga.

35.     Defendants were not authorized to withdraw $300,000 from the funds Plaintiff transferred to NWE's escrow account.

36.     Defendants' withdrawal of $300,000 from the funds Plaintiff transferred to NWE's escrow account has deprived Plaintiff of its property permanently or for an indefinite time.

37.     Plaintiff has demanded that Defendants return the money to Plaintiff but Defendants have refused.

WHEREFORE, Plaintiff TV Service ZAO demands judgment for compensatory damages in addition to all interest, costs, attorneys' fees, and all other relief permitted by law.

Dated January 26, 2012.

_____/s/_____
Robert C. Josefsberg
Florida Bar No. 040856
Matthew Weinshall
Florida Bar No. 0084783
**PODHURST ORSECK, P.A.**
25 West Flagler Street, Suite 800
Miami, FL 33130
Tel:  305.358.2800
Fax:  305.358.2382

*Counsel for Plaintiff*