UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-20317-CIV-LENARD/O'SULLIVAN

TV SERVICE ZAO,  a closed joint
stock company organized under
the laws of the Russian Federation,

      Plaintiff/Counter-Defendant,

v.

NWE TALENT AGENCY AND
MANAGEMENT, INC. d/b/a NWE
TALENT AGENCY AND
MANAGEMENT COMPANY, a Florida
corporation, RYAN BURKE, an individual
and VISION ENTERTAINMENT
WORLDWIDE, LLC, a Florida corporation,

      Defendants/Counter-Plaintiffs.

_____/

## ORDER[1]

      THIS MATTER is before the Court on the Plaintiff/Counter-Defendant's Motion

for Summary Judgment and Incorporated Memorandum of Law (DE# 84, 11/28/12).

Having reviewed the applicable filings and the law, it is

      ORDERED AND ADJUDGED that the Plaintiff/Counter-Defendant's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 84, 11/28/12) is

**GRANTED in part and DENIED in part** for the reasons stated herein.

_____

      [1] On April 19, 2012, the parties consented to magistrate judge jurisdiction over certain motions including motions for summary judgment. See Joint Consent to Jurisdiction by a United States Magistrate Judge (DE# 49 at 4, 4/20/12). On April 24, 2012, the district judge referred this case to the undersigned for all pretrial matters and motions. See Order of Reference of All Pretrial Matters to Magistrate Judge (DE# 52, 4/24/12). Accordingly, the undersigned has jurisdiction for the final disposition of the instant motion.

## BACKGROUND

On February 9, 2012, the plaintiff, TV SERVICE ZAO (hereinafter "ZAO"), filed an amended complaint for fraud, unjust enrichment and conversion against NWE Talent Agency and Management, Inc. (hereinafter "NWE"), Ryan Burke and Vision Entertainment Worldwide (hereinafter "VEW"), collectively referred to in this Order as the "Burke Entities." See Amended Complaint (DE# 10, 2/9/12).[2] On March 12, 2012, the Burke Entities filed their answer to the amended complaint and a counterclaim for breach of contract against ZAO. See Answer of NWE Talent Agency and Management, Inc. ("NWE")[,] Ryan Burke ("Burke") and Vision Entertainment Worldwide LLC ("VEW") (DE# 35, 3/12/12); Counterclaim (DE# 36, 3/12/12).

On November 28, 2012, ZAO filed the instant motion for summary judgment on the Burke Entities' counterclaim for breach of contract. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84, 11/28/12). ZAO also filed the following documents in support of its summary judgment motion:

- Notice of Filing Deposition Excerpts of Ryan Burke (DE# 85, 11/28/12);

- Notice of Filing Deposition Excerpts of Ryan Burke (DE# 86,

---

[2] The amended complaint also alleged causes of action for fraud, unjust enrichment, aiding and abetting fraud and breach of agreement against George Sergeev and World Media Alliance, Inc. ("WMA"). See Amended Complaint (DE# 10, 2/9/12). A default and later a default judgment was entered against Mr. Sergeev and WMA. See Clerk's Default (DE# 34, 3/12/12); Order Adopting Report and Recommendation of Magistrate Judge (D.E.  57), Granting Plaintiff's Motion for Default Judgment Against Defendants George Sergeev and World Media Alliance, Inc. (D.E. 42), and Entering Final Default Judgment Against Defendants George Sergeev and World Media Alliance, Inc. (DE# 63, 6/14/12).

11/28/12);[3]

- Notice of Filing Deposition Excerpts of [Troy Carter] (DE# 87, 11/28/12);[4]

- Notice of Filing Deposition Excerpts of Kimone Love (DE# 88, 11/28/12);

- Notice of Filing Complete Deposition Transcript of Troy Carter (DE# 96, 12/14/12);

- Notice of Filing Complete Deposition Transcript of Kimone Love (DE# 97, 12/14/12) and

- Notice of Filing Complete Deposition Transcript of Ryan Burke (DE# 98, 12/14/12).

The Burke Entities filed their response on December 18, 2012. See Defendant's Response to Motion of Plaintiff/Counter-Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 101, 12/18/12).[5] ZAO filed its reply on December 31, 2012. See Plaintiff/Counter-Defendant's Reply Brief in Further Support of Motion for Summary Judgment (DE# 102, 12/31/12). This matter is ripe for consideration.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment motions shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

---

[3] No deposition transcript was attached to docket entry 86.

[4] This document was improperly captioned "Notice of Filing Deposition Excerpts of Ryan Burke."

[5] The Burke Entities inadvertently filed their response twice, see DE# 100 and 101, the undersigned will refer to the later filed response (DE# 101) in this Order.

P. 56(a). The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

4

Id. at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

## FACTS

ZAO is a wholly owned subsidiary of UTH Russia Limited ("UTH"). Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 4, 11/28/12).[6] UTH's main assets include MUZ-TV, a free Russian music TV channel modeled after MTV. Id. Since 2003, ZAO has presented the nationally televised MUZ-TV Music Awards Show ("MUZ Awards"), which is held annually in Moscow, Russia during the month of June. Id. One of the highlights of the annual MUZ Awards is a performance by a major international recording artist. Id. Past performers have included Christina Aguilera, Jennifer Lopez, Katy Perry and 50 Cent. Id.

Ryan Burke is the president of VEW, a Florida corporation holding itself out as operating a full service entertainment company and talent agency. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 4, 11/28/12). Mr. Burke is also a "designated agent" and "senior booking agent" for NWE which also holds itself out as operating a "full

---

[6] ZAO's statement of undisputed material facts is incorporated in its motion for summary judgment. Unless otherwise noted, the Burke Entities do not dispute the facts cited in ZAO's statement of undisputed material facts. Some facts which are not pertinent to the instant motion have been omitted from this section.

service" talent agency and entertainment company. Id. In order to create the appearance that NWE and VEW are distinct corporate entities, Mr. Burke listed his mother, Juliet Sucki, as the president of NWE. Id. at 5. In practice, Ms. Sucki is a "figurehead" for NWE and Mr. Burke is the controlling member and corporate representative of NWE and VEW. Id.

The Burke Entities are not licensed talent agencies pursuant to section 468.403 of the Florida Statutes. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 5, 11/28/12). VEW lists its principal place of business as 1395 Brickell Avenue, Suite 800, Miami, Florida 33131. Id. This address is a "virtual office" and no representative of VEW works or has ever worked at this physical address. NWE lists its principal place of business as 1680 Michigan Avenue, 700, Miami Beach Florida, 33139. This address is also a virtual office. Id.

George Sergeev is the president of World Media Alliance, Inc. ("WMA"), a Florida corporation, holding itself out as operating a music label. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 5, 11/28/12). Prior to January 2012 (and at any time thereafter), the Burke Entities, Mr. Sergeev and WMA had never worked with the artist known as "Lady Gaga," were never authorized representatives of Lady Gaga and had never secured her as a performer on anyone else's behalf. Id. at 6. Troy Carter has served as Lady Gaga's exclusive manager and handles all aspects of Lady Gaga's career, including her music, tours and partnerships since 2007. Id. William Morris Endeavor Entertainment, LLC ("William Morris") is the exclusive booking/talent agent for Lady Gaga and is

6

responsible for booking Lady Gaga for concerts and performances. Id.

In or about August 2011, ZAO representatives sought to coordinate the booking of an appearance and show by Lady Gaga for the 2012 MUZ Awards scheduled for June 1, 2012. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 4, 11/28/12). In or around mid-August of 2011, after being informed that ZAO was interested in booking Lady Gaga to perform at the 2012 MUZ Awards, Mr. Sergeev stated that he could arrange for the requested performance of Lady Gaga at the 2012 MUZ Awards. Id. at 6. Also, in or around mid-August of 2011, Mr. Burke informed Mr. Sergeev that he could use his relationship with Troy Carter to secure Lady Gaga for the 2012 MUZ Awards and would need a deposit, also known as a "binder," before engaging in any negotiations to secure Lady Gaga. Id. On August 23, 2011, Mr. Sergeev's company, WMA, and Mr. Burke's company, NWE, entered into a Binder Agreement/Intent to Engage Talent (hereinafter referred to as "WMA/NWE Binder Agreement"). See Exhibit 1 of Counterclaim (DE# 36-1 at 1, 3/12/12).

Under the WMA/NWE Binder Agreement, WMA was directly engaging NWE to "act on its behalf" to secure the services of Lady Gaga and WMA agreed to pay NWE a binder deposit in the amount of $150,000.00, which was to be "placed into the Escrow Account at NWE Talent Agency & Management, Inc." See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 7, 11/28/12). NWE received the $150,000.00 binder/deposit from Mr. Sergeev/WMA pursuant to the WMA/NWE Binder Agreement. Id. The WMA/NWE Binder Agreement provided that the total Agent/Booking Fee(s) and Broker Fee(s), if any, for NWE was

$300,000.00. Id. at 7. The WMA/NWE Binder Agreement further provided that "[a]ll funds received in escrow at NWE Talent & Management, Inc. shall be fully refundable should the following occur: ARTIST and/or ARTIST's Management and/or Agent(s) does not accept your offer" or "negotiations do not end in fully executed contract(s)." Id.

ZAO was not a party to the WMA/NWE Binder Agreement and had no obligations under the WMA/NWE Binder Agreement. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 7, 11/28/12). ZAO did not agree to engage NWE under the WMA/NWE Binder Agreement or pay any monies to NWE under the WMA/NWE Binder Agreement. Id. At the time that the WMA/NWE Binder Agreement was entered into between WMA and NWE, ZAO had no agreement with Mr. Sergeev/WMA and Mr. Sergeev/WMA had no authority to act on behalf of ZAO for any purpose. Id.

On August 28, 2011, ZAO entered into a binder agreement/intent to engage talent agreement directly with Mr. Sergeev and his company, WMA (the "WMA/ZAO Binder Agreement"). See Exhibit 2 of Counterclaim (DE# 36-1 at 3, 3/12/12). None of the Burke Entities were parties to the WMA/ZAO Binder Agreement. Id.; see also Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 8, 11/28/12). The purpose of the WMA/ZAO Binder Agreement was for WMA to obtain a binder/deposit from ZAO in the amount of $300,000.00 before it moved forward with "enter[ing] into negotiations" with Lady Gaga and/or her authorized representatives/agents to secure Lady Gaga to perform at the MUZ Awards on June 1, 2012 in Moscow, Russia. Id. Pursuant to the WMA/ZAO Binder Agreement, the total "Guarantee & Compensation" that could be offered to Lady Gaga

8

by WMA for the proposed performance was "$1,500,000.00 USD Plus All Expenses."
Id. at 8-9. The WMA/ZAO Binder Agreement further provided that "[a]ll funds received
in escrow at World Media Alliance, Inc. shall be fully refundable should the following
occur: "ARTIST and/or ARTIST's Management and/or Agent(s) does not accept your
offer till October 30, 2011" or "negotiations do not end in fully executed contract(s) or
negotiations towards a formal agreement memorializing the terms of the above
referenced Engagement(s)." Id. at 9.

During the process of purportedly securing Lady Gaga for the performance at the
2012 MUZ Awards, the Burke Entities provided Mr. Sergeev/WMA and ZAO with a
number of different proposals with varying concepts and material terms for purposes of
the proposed "Artist Engagement Agreement" which was to be proposed to Lady Gaga
and Lady Gaga's authorized representatives. See Plaintiff/Counter-Defendant's Motion
for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 9,
11/28/12). The various proposed "Artist Engagement Agreements" and non-binding
proposals were prepared with the intention of sending them to Lady Gaga's authorized
representatives for review and possible approval. Id. The proposed agreements
required specific approval and acceptance by Lady Gaga and/or one of her authorized
representatives, such as William Morris or Troy Carter. Id.

The Burke Entities created a new version of a proposed artist engagement
proposal dated December 16, 2011 (hereinafter referred to as "12/16 Proposal"). See
Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated
Memorandum of Law (DE# 84 at 10, 11/28/12); Exhibit 3 of Counterclaim (DE# 36-1 at
7, 3/12/12). The 12/16 Proposal was not an "operative" agreement and could not be an

operative document until Lady Gaga, William Morris, Troy Carter or an authorized representative of Lady Gaga signed the 12/16 Proposal under the signature line titled "authorized signatory." Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 10, 11/28/12). The 12/16 Proposal was not signed or entered into by Lady Gaga or any authorized representative of Lady Gaga. Id.

On December 23, 2011, Mr. Burke sent an email to ZAO. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 11, 11/28/12); Email (DE# 84-9, 11/28/12). The email stated that "the funds MUST be in escrow no later than end of business on Tuesday, December 27, 2011." Id. (capitalization in original). Mr. Burke further stated in the email that the "the funds were going DIRECTLY to NWE Talent who would then forward to her [Lady Gaga's] Management/Agent a deposit, that way they would know that it's real people they are dealing with." Id. (capitalization in original). On or about December 27, 2011, WMA on behalf of ZAO paid NWE a deposit of $1,350,000.00 in order to secure Lady Gaga's performance in Moscow, Russia on June 1, 2012. See Acknowledgment of Receipt (DE# 84-10, 11/28/12).

On January 10, 2012, NWE sent Mr. Sergeev/WMA a revised artist engagement agreement (hereinafter referred to as "1/10 Proposal"). See Exhibit 4 of Counterclaim (DE# 36-1 at 12, 3/12/12). The 1/10 Proposal proposed that Lady Gaga would appear for a performance on October 9, 2012 (well after the June 1, 2012 date of the MUZ Awards) and that the compensation would be $3.5 million. Id. The 1/10 Proposal was only signed by Kimone Love of NWE, who is Burke's cousin. Ms. Love had never

10

previously worked in the entertainment industry, but was briefly given the title as Chief Operating Officer of NWE from January 2012 to June 2012. See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 12, 11/28/12). Neither Ms. Love, nor anyone at NWE or any of the Burke Entities was an authorized representative of Lady Gaga or authorized to enter into any agreements on behalf of Lady Gaga. Id. Neither Troy Carter nor Lady Gaga accepted any of the prior proposals from ZAO, including the 1/10 Proposal for a performance date in October 2012. Id. The 1/10 Proposal was not signed or accepted by any ZAO representative and ZAO did not agree to any of the proposed terms in the 1/10 Proposal. Id.

In response to the 1/10 Proposal, Mr. Sergeev wrote to Mr. Burke: "Date MUZ TV need June 1, all deal is impossible and unacceptable." See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 12, 11/28/12); see also Email (DE# 84-13, 11/28/12). On January 20, 2012, Andrey Dimitrov of ZAO sent Mr. Burke an email in response to the 1/10 Proposal requesting an immediate return of the $1,650,000.00[7] paid in connection with the engagement. See Email (DE# 84-14, 11/28/12).

NWE received $1,500,000.00 of ZAO's funds and only $1,050,000 remained in

---

[7] This amount is calculated as follows: the $300,000.00 paid by ZAO to WMA pursuant to the WMA/ZAO Binder Agreement (Exhibit 2) ($150,000.00 was paid by WMA to Burke pursuant to the WMA/NWE Binder Agreement (Exhibit 1)) plus the $1,350,000.00 paid by ZAO on or about December 27, 2011. See Acknowledgment of Receipt (DE# 84-10, 11/28/12).

NWE's bank account as of January 31, 2012.[8] See Plaintiff/Counter-Defendant's Motion
for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 13,
11/28/12). Mr. Burke would have made a profit of "on or around $300,000.00" if
the12/16 Proposal had been fulfilled. Burke Deposition (DE# 98-2 at 26, 12/14/12).

## ANALYSIS

ZAO seeks summary judgment on the Burke Entities' breach of contract
counterclaim against ZAO. The counterclaim alleges that WMA/Mr. Sergeev and NWE
entered into a contract, "WMA/NWE Binder Agreement" (Exhibit 1), wherein NWE was
retained to act on behalf of WMA/Mr. Sergeev to enter into negotiations with agents of
Lady Gaga to perform on June 1, 2012 in Moscow, Russia. See Counterclaim (DE# 36
at ¶ 9, 3/12/12). The counterclaim further alleges that WMA and ZAO entered into a
"binder agreement", "WMA/ZAO Binder Agreement" (Exhibit 2), "which authorized WMA
to act on its behalf to secure the services of Lady Gag[a] to perform on June 1, 2012 in
Moscow, Russia." Id. at ¶10. Under the terms of the WMA/ZAO Binder Agreement, "TV
Services [ZAO] agreed to work exclusively with WMA or their assigns. TV Services
[ZAO] agreed not to contact, contract with nor disclose any information to any other
agents, agencies, promoters, and/or any of their employees, representatives and
clients." Id. at ¶11. The WMA/ZAO Binder Agreement also stated that "Engagement
date(s) subject to change according to ARTIST availability." See WMA/ZAO Binder
Agreement, Exhibit 1 (DE# 36-1 at 4, 3/12/12). The counterclaim alleges that Lady

---

[8] On February 1, 2012, the Court entered an Order freezing the funds in this
account. See Order Granting Joint Motion to Freeze Funds in Escrow Account (DE# 6,
2/1/12).

Gaga had a schedule conflict on June 1, 2012, that WMA and NWE performed under the contract by securing Lady Gaga for a performance on October 9, 2012 in Moscow, Russia and that ZAO breached the agreement by directly contacting "the agents of Lady Gaga and others in direct violation of their agreement that NWE, VEW and WMA be on [sic] the exclusive persons to discuss or [sic] negotiations the appearance of Lady Gaga in Moscow." See Counterclaim (DE# 36 at ¶¶13-15, 3/12/12).

1.      **Breach of Contract Counterclaim**

Florida law governs in the instant case. The elements of a breach of contract claim in Florida are: "(1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).

ZAO argues that there was no valid contract between ZAO and the Burke Entities and that the four documents[9] that the Burke Entities rely on to support their breach of contract counterclaim are defective because the documents are either agreements between different parties or mere proposals. See Plaintiff/Counter-Defendant's Reply Brief in Further Support of Motion for Summary Judgment (DE# 102 at 2-3, 12/31/12).

Although there is no direct agreement between ZAO and the Burke Entities, there was an agreement between ZAO and WMA to secure the performance of Lady

---

[9] The four documents are described in detail in the "Facts" section of this Order and are attached as exhibits to the Counterclaim (DE# 36, 3/12/12) as follows: "WMA/NWE Binder Agreement" (Exhibit 1), "WMA/ZAO Binder Agreement" (Exhibit 2), "12/16 Proposal" (Exhibit 3) and "1/10 Proposal" (Exhibit 4).

Gaga on June 1, 2012 in Moscow, Russia. See WMA/ZAO Binder Agreement (Exhibit 2). There was an agreement between WMA and NWE (a Burke entity) to secure the performance of Lady Gaga on June 1, 2012 in Moscow, Russia. See WMA/NWE Binder Agreement (Exhibit 1). There was also a 12/16 Proposal (Exhibit 3) signed only by "WORLD MEDIA ALLIANCE/George Sergeev on behalf of MUZ-TV." See 12/16 Proposal, Exhibit 3 of Counterclaim (DE# 36-1 at 9, 3/12/12). The Burke Entities appear to acknowledge that the fourth document, the 1/10 Proposal (Exhibit 4), was not a valid contract, but  "was merely a document from NWE advising of the January 10, 2012 meeting with Lady Gaga's management and confirming that Lady Gaga would perform conditionally on October 9, 2012 in Moscow. . . . The 1/10 document was included as an exhibit to put the dealings between the parties and third parties in context." In any event, the undersigned finds that the 1/10 Proposal (Exhibit 4), signed only by Ms. Love who is undisputedly not an authorized representative or agent of Lady Gaga, is not a valid contract.

The only breach alleged in the Counterclaim (DE# 36) is that ZAO directly contacted "the agents of Lady Gaga and others in direct violation of their agreement that NWE, VEW and WMA be on [sic] the exclusive persons to discuss or [sic] negotiations the appearance of Lady Gaga in Moscow." See Counterclaim (DE# 36 at ¶15, 3/12/12). There is an exclusivity provision/no contact clause in the WMA/NWE Binder Agreement (Exhibit 1). It states that:

> Upon execution of this Agreement, PURCHASER [WMA] and their officers, directors, principals, agents, employees, representatives, and clients agree to work exclusively with NWE Talent Agency &

14

Management, Inc. (BROKER) and/or their assigns. PURCHASER [WMA] also agrees NOT to contact, contract with, nor disclose any information to any other agents, agencies, promoters, and/or any of their employees, representatives, and clients so long as you are under contract with NWE Talent Agency & Management, Inc. (BROKER) unless otherwise approved/authorized by NWE Talent Agency & Management, Inc. (BROKER).

WMA/NWE Binder Agreement (Exhibit 1) (DE# 36-1 at 2, 3/12/12). The undersigned finds that the Burke Entities cannot enforce the exclusivity/no contact provision in the WMA/NWE Binder Agreement (Exhibit 1) against ZAO because ZAO was not a party to that contract and unlike other documents, there is no indication that WMA was entering into the WMA/NWE Binder Agreement (Exhibit 1) as a representative of or on behalf of ZAO. In fact, there is no mention of ZAO in the WMA/NWE Binder Agreement (Exhibit 1). Only parties to a contract may be sued for breach of the contract terms. See Preve v. Albert, 578 So.2d 33, 34 (Fla. 4th DCA 1991) (reversing final judgment for breach of contract where litigant did not sign the contract and thus was not a party to the contract); see also In re Donner's Estate, 364 So. 2d 742, 749 (Fla. 3d DCA 1978) (stating that "[o]rdinarily, a contract cannot bind one who is not a party thereto since to create a valid contract there must be reciprocal assent to a certain and definite proposition.") (citing Strong & Trowbridge Co. v. H. Baars & Co., 54 So. 92 (1910)). The undersigned concludes that as a matter of law, ZAO cannot be liable to the Burke Entities for breaching the exclusivity/no contact provision contained in the WMA/NWE Binder Agreement (Exhibit 1).

There is also an exclusivity/no contact provision in the WMA/ZAO Binder Agreement (Exhibit 2). It states in pertinent part:

15

> Upon execution of this Agreement, PURCHASER [ZAO] and their officers, directors, principals, agents, employees, representatives, and clients agree to work exclusively with World Media Alliance, Inc. (Broker) and/or their assigns. PURCHASER also agrees NOT to contact, contract with nor disclose any information to any other agents, agencies, promoters, and/or any of their employees, representatives, and clients so long as you are under contract with World Media Alliance, Inc. (BROKER) unless otherwise approved/authorized by World Media Alliance, Inc. (BROKER).

WMA/ZAO Binder Agreement (Exhibit 2) (DE# 36-1 at 5, 3/12/12). The WMA/ZAO Binder Agreement (Exhibit 2) is between ZAO and WMA/Mr. Sergeev. The Burke Entities are not a party to the WMA/ZAO Binder Agreement (Exhibit 2) and the WMA/ZAO Binder Agreement (Exhibit 2) does not mention the Burke Entities. In Florida, "[a] person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract." Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1030-31 (Fla. 4th DCA 1994). "The exception to this rule is where the entity that is not a party to the contract is an intended third party beneficiary of the contract." Id. at 1031 (citing Jacobson v. Heritage Quality Constr. Co., 604 So.2d 17 (Fla. 4th DCA 1992)).

The Burke Entities were not intended third party beneficiaries to the WMA/ZAO Binder Agreement (Exhibit 2). "A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." Caretta Trucking, Inc., 647 So.2d at 1031 (citing Aetna Casualty & Surety Co. v. Jelac Corp., 505 So.2d 37 (Fla. 4th DCA 1987)). "To find the requisite intent, it must be shown that both contracting parties intended to benefit the third party; it is insufficient to show that only one party unilaterally intended to benefit the third party." Hunt Ridge at

16

Tall Pines, Inc. v. Hall, 766 So. 2d 399, 400 (Fla. 2d DCA 2000). "Florida law looks to [the] 'nature or terms of a contract' to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'"Jenne v. Church & Tower, Inc., 814 So.2d 522, 524 (Fla. 4th DCA 2002) (citation omitted). Here, no such intent can be found in the WMA/ZAO Binder Agreement (Exhibit 2). Accordingly, the Burke Entities cannot sue ZAO for violating the terms of the exclusivity/no contact provision contained in the WMA/ZAO Binder Agreement (Exhibit 2).

The third document which the undersigned will consider is the 12/16 Proposal (Exhibit 3).[10] Assuming arguendo that the 12/16 Proposal (Exhibit 3) is a valid and enforceable contract and that Mr. Sergeev had the authority to bind ZAO by executing the 12/16 Proposal (Exhibit 3), the 12/16 Proposal (Exhibit 3) does not include an exclusivity/no contact provision and by its very terms does not incorporate any other agreements, written or oral, between the parties. See 12/16 Proposal, Exhibit 3 of Counterclaim (DE# 36-1 at 11, 3/12/12) (stating that the document "constitutes the sole, complete, and binding agreement between the Parties hereto."). Thus, ZAO could not have breached the 12/16 Proposal (Exhibit 3) by working with someone other than WMA and its agents (the exclusivity prohibition) or contacting representatives of Lady Gaga (the no contact prohibition).

In sum, ZAO is entitled to summary final judgment on the Burke Entities' breach

---

[10] The undersigned has already determined that the fourth document, the 1/10 Proposal (Exhibit 4), was not a valid contract because it was signed only by Ms. Love and it is undisputed that Ms. Love was not an authorized representative or agent of Lady Gaga.

of contract counterclaim because the Burke Entities have failed to show that ZAO breached the terms of a valid contract.

2.    **Liquidated Damages**

ZAO further argues that the Burke Entities cannot recover liquidated damages of $1,350,000.00 "because the undisputed facts establish that an amount of $1,350,000.00 in liquidated damages would clearly constitute an unenforceable and unreasonable penalty." See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 26, 11/28/12). Of the four documents at issue, the only document[11] containing a liquidated damages provision was the 12/16 Proposal. See 12/16 Proposal, Exhibit 3 of Counterclaim (DE# 36-1 at ¶¶ 5, 6, 3/12/12). The only signature on the 12/16 Proposal was that of Mr. Sergeev under "World Media Alliance/George Sergeev on behalf of MUZ-TV." Assuming arguendo, that the 12/16 Proposal was a valid and enforceable contract and that Mr. Sergeev had the authority to bind ZAO to that contract, the breach alleged in the Counterclaim is that ZAO directly contacted "the agents of Lady Gaga and others in direct violation of their agreement that NWE, VEW and WMA be on [sic] the exclusive persons to discuss or [sic] negotiations the appearance of Lady Gaga in Moscow." See Counterclaim (DE# 36 at ¶15, 3/12/12). There is no such provision in the 12/16 Proposal. The only exclusivity/no contact clause applicable to ZAO is contained in the WMA/ZAO Binder Agreement (Exhibit 2), see discussion supra. The 12/16 Proposal specifically states that:

---

[11] The undersigned will not address the terms of the 1/10 Proposal. See supra.

> This constitutes the sole, complete, and binding agreement between the Parties hereto. This AGREEMENT supercedes all other prior agreements, arrangements and understandings, written or oral, between the Parties with respect to the subject matter hereof. This AGREEMENT may not be changed, modified, or altered except by an instrument in writing signed by the Parties.

12/16 Proposal, Exhibit 3 of Counterclaim (DE# 36-1 at 11, 3/12/12). Thus, by its very terms, the exclusivity/ no contact clause in the WMA/ZAO Binder Agreement (Exhibit 2) is not part of this agreement. Having failed to allege a breach of any of the terms of the 12/16 Proposal, the Burke Entities would not be entitled to liquidated damages under the 12/16 Proposal. Thus, the Court does not need to determine whether the liquidated damages provisions contained in paragraphs 5 and 6 of the 12/16 Proposal are enforceable under Florida law. For this reason, ZAO is entitled to summary judgment on any claim for liquidated damages in the Counterclaim.

### 3.     Operating an Unlicensed Talent Agency Business

Finally, ZAO argues that it is entitled to summary judgment on the breach of contract counterclaim because the Burke Entities are "operating and engaging in an unlicensed talent agency business, which serves to void any benefits obtained by the Burke Entities as a result of such unlicensed and unlawful activity." See Plaintiff/Counter-Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 26, 11/28/12). ZAO relies on section 468.403 of the Florida Statutes, which states in pertinent part that:

> [a] person may not own, operate, solicit business, or otherwise engage in or carry on the occupation of a talent agency in this state unless the person first procures a license for the talent agency from the department . . . . [A] person may not advertise or otherwise hold herself or himself out

as a "talent agency" or "talent agent" unless the person is licensed under
this section as a talent agency.

Fla. Stat. § 468.403(1). ZAO argues that because the Burke Entities acted as

unlicensed agents, any contracts they entered into were void and they are not entitled

to any commissions and/or profits thereunder. See Plaintiff/Counter-Defendant's Motion

for Summary Judgment and Incorporated Memorandum of Law (DE# 84 at 26,

11/28/12) (citing Vista Designs, Inc. v. Silverman, 774 So. 2d 884, 886 (Fla. 4th DCA

2001) (attorney who was not licensed to practice law in the State of Florida was

required to disgorge fees received from client)). The Burke Entities argue that "there is

no prohibition set forth in Fla. Stat. [§] 468 that would void the contract of [ZAO] with

NWE" because "[t]his statute is designed and intended for the protection of the ARTIST

not third parties like [ZAO]." See Defendant's Response to Motion of Plaintiff/Counter-

Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law

(DE# 101 at 17, 12/18/12) (capitalization in original). The undersigned has been unable

to find any case law discussing section 468.403 or the intent of the statute. In any

event, the Court does not need to address this issue because it finds that there was no

valid contract between ZAO and the Burke Entities that ZAO breached.

## CONCLUSION

For the reasons stated herein, the Plaintiff/Counter-Defendant's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE# 84, 11/28/12) is

**GRANTED in part and  DENIED in part**. ZAO is entitled to summary final judgment on

the breach of contract counterclaim because there was no valid contract between ZAO

and the Burke Entities that ZAO breached. ZAO's request for the release of funds held

20

is escrow is **DENIED**. ZAO will need to prove its claims at trial before it is entitled to an Order releasing the funds held in escrow pursuant to the Order Granting Joint Motion to Freeze Funds in Escrow Account (DE# 6, 2/1/12).

DONE AND ORDERED, in Chambers, at Miami, Florida this **9th** day of January, 2013.

_____
JOHN  J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Lenard
All counsel of record